# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MARKETFLEET PUERTO RICO, INC.,** derivatively on behalf of **MARKETFLEET, INC.** <br><br> Plaintiff, <br><br> vs. <br><br> **YARDSTASH SOLUTIONS, LLC.** <br><br> Defendant. | CASE No.: **3:18-cv-0112** <br><br> **COMPLAINT FOR DECLARATORY JUDGEMENT OF UNENFORCEABILITY OF PATENT; DERIVATIVE ACTION** <br><br> JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

**TO THIS HONORABLE COURT:**

**COMES NOW** Plaintiff MARKETFLEET INC. (hereinafter "MFI"), through MARKETFLEET PUERTO RICO, INC. (hereinafter "Marketfleet"), and by and through the undersigned attorney, hereby files this Complaint against Defendant Yardstash Solutions, Inc. (hereinafter "Defendant"), and respectfully states, alleges, and prays as follows:

### I. INTRODUCTION

1. Marketfleet brings this action seeking a declaratory judgment that Marketfleet's Outdoor Portable, Bike Tent, Garden Equipment, Pool Storage, and Organizer Shed (also referred to as the "Driftsun® Storage Tent") does not infringe

VERIFIED COMPLAINT - 1

Defendant's U.S. Design Patent No. D689,579 ("the '579 patent") entitled "Storage Unit", granted on September 10, 2013, and assigned to Defendant Yardstash on October 25, 2016. Marketfleet also seeks a declaratory judgment that the '579 patent is invalid and/or unenforceable.

2. Marketfleet is the result of the alliance between MFI, relying on Puerto Rico's portrayal as a jurisdiction welcoming investment, as well as the incorporation of technologically industries, recognizing the Puerto Rico's highly skilled labor, and manufacturing.

3. Unfortunately, Defendant's claim to own the '579 resulted in multiple threatening letters against Marketfleet, that drastically disrupted Marketfleet's business operations.

4. As such, this action seeks relief for MFI from the imminent threat of patent infringement through a declaration of unenforceability of the mischievously '579 Patent.

5. Declaratory relief is warranted to determine that the '579 Patent is currently unenforceable.

6. The infringement allegations by Defendant put at risk the multi-million-dollar investment made by Marketfleet and the good name of Puerto Rico as a center for technology investment, and manufacturing.

## II. THE PARTIES

7. MFI is a corporation organized under the laws of the State of Delaware with places of business in Delaware, California, and Puerto Rico.

8. Marketfleet is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico having a principal place of business at 1225 Ponce de Leon Ave., Suite PH#5-726, San Juan PR 00907.

9. Defendant Yardstash is a limited liability company organized under the laws of the State of California with its principal place of business located at 13223-1 Black Mountain Road, Suite 379, in the City of San Diego, County of San Diego, State of California.

### III. JURISDICTION AND VENUE

10. Jurisdiction is conferred upon this Honorable Court as this is an action arising under 28 U.S.C. § 1331 and § 1338 since the matter in controversy arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, pursuant to the Patent Laws of the United States, 35 U.S.C. §§101 et seq.

11. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process, because substantially all of the operative facts, including Defendant Yardstash threats against Marketfleet business, arose in Puerto Rico.

12. This Court has personal jurisdiction over Defendant; and venue in this district is proper pursuant to 28 U.S.C. §1391(b) and (c) because, upon information and belief, Defendant has engaged in acts constituting doing business in the Commonwealth of Puerto Rico, including in this judicial district. Upon information and belief, Defendant transacts and does business in Puerto Rico, including selling and promoting products embodying the claims of its '579 patent.

VERIFIED COMPLAINT - 3

## IV. NATURE OF THE ACTION

13. Marketfleet seeks relief from the imminent threat of patent infringement through a declaration of unenforceability of patent, which may be granted under the Declaratory Judgment ACT, 28 USC §§2201-22012, and Rule 57 of the Federal Rules of Civil Procedure.

14. Marketfleet, also requests relief under Federal Rule of Civil Procedure 23.1 and 14 L.P.R.A. § 4003, governing derivative actions.

## V. STATEMENT OF FACTS

15. On September 10, 2013, U.S. Design Patent No. D689,579 was granted to inventor George V. Barker from San Diego, California. See Exhibit A.

16. In response to the popularity of Marketfleet's Driftsun® Storage Tent, on January 11 2016, Defendant sent MFI a threatening letter, wrongfully accusing MFI of infringing Defendant's patent based on its sale of the Portable Organizer Shed and engaging in California Unfair Competition (Bus. & Prof. Code § 17200, et seq.). See Exhibit B.

17. Notwithstanding the above, on October 25, 2016, George V. Barker, on a document entitled "ASSIGNMENT OF PATENT APPLICATION AND PATENTS", sworn and subscribed before California Public Notary Heidi Nangle, assigned and transferred the rights of the '579 patent to Defendant Yardstash Solutions LLC. See Exhibit C.

18. Thereafter, and on March 28th, 2017, Defendant filed suit against Marketfleet's affiliate, and licensee MFI wrongfully asserting that the Driftsun® Storage Tent product infringes Defendant's '579 patent. See, Yardstash Solutions,

LLC. v. MARKETFLEET, INC., and DOES 1 THROUGH 25, inclusive, Civil Action No. 1:17-cv-0625 (Southern Dist. Of California. 2017) ("the California litigation").

19. The California litigation is the subject of a pending Motion to Dismiss due to Improper Venue submitted by MFI, following the US Supreme Court decision on *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U. S. \_\_\_\_ (2017).

20. Marketfleet has imported into the United States the Driftsun® Storage Tent product which is at issue in the California litigation. An image of the Driftsun® Storage Tent product is attached hereto as Exhibit D.

21. Defendant takes the position that the Driftsun® Storage Tent product in Exhibit D infringes the '579 patent.

22. Defendant also takes the position that the '579 patent is valid and enforceable.

23. However, the Driftsun® Storage Tent product in Exhibit D does not infringe the '579 patent.

24. In addition, the '579 patent is invalid and unenforceable.

25. Defendant has asserted in the California litigation that the Driftsun® Storage Tent product of Exhibit D infringes the '579 patent, therefore parting from the premise that the '579 patent is valid.

26. As a result of Defendant's litigation over the product of Exhibit D and the '579 patent, and the circumstances surrounding that litigation, an actual, present, and justiciable controversy has arisen between Marketfleet and Defendant over the Driftsun® Storage Tent product.

27. Accordingly, Marketfleet respectfully requests that the Court issues a declaratory judgment confirming that Marketfleet, is not infringing Defendant's patent rights as a result of its sale, offer to sell, distribution, or marketing of the Driftsun® Storage Tent, including any valid patent claims identified by Defendant. The specific patent identified by Defendant is listed below.

**a. Invalidity of Defendant's '579 Patent due to existing prior art**

28. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

29. Defendant is currently listed as the assignee of the '579 patent. A copy of the '579 patent, and its respective assignment of rights are attached as Exhibit A, and F, respectively.

30. The '579 patent is legally limited to the scope of the patent claims set forth therein.

31. Marketfleet's product does not infringe the claims of the '579 patent because the accused product does not fall within the scope of the patent's claims.

32. Moreover, if Defendant maintains that the Marketfleet product falls within the scope of the '579 patent claims, then the '579 patent also falls within the scope of the disclosure, either by the doctrine of equivalents, or literal infringement, as viewed by an ordinary observed in light of the following prior art shown on Exhibit E:

    a. U.S. Patent No. 1,290,824 ("the '824 patent"), entitled "Tent". Since the '824 patent was issued on January 7, 1919, about ninety-three (93) years

before the '579 patent was filed, the '579 patent would necessarily be invalid.

  b. U.S. Patent No. 2,246,813 ("the '813 patent"), entitled "Vehicle Bed Construction". Since the '813 patent was issued on June 24, 1941, about seventy-two (72) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

  c. U.S. Patent No. 2,646,057 ("the '057 patent"), entitled "Tent Construction". Since the '057 patent was issued on July 21, 1953, about sixty (60) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

  d. U.S. Patent No. 2,963,030 ("the '030 patent"), entitled "Portable Collapsible Shelter". Since the '030 patent was issued on December 6, 1960, about fifty-three (53) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

  e. U.S. Patent No. 3,027,189 ("the '189 patent") entitled "Collapsible Shelter". Since the '189 patent was issued on March 27, 1962, about fifty-one (51) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

  f. U.S. Patent No. 3,168,101 ("the '101 patent"), entitled "Outside Frame Tent". Since the '101 patent was issued on February 2, 1965, about forty-seven (47) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

g. U.S. Patent No. 3,536,083 ("the '083 patent"), entitled "Portable Camping Shelter". Since the '083 patent was issued on October 27, 1970, about forty-three (43) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

h. U.S. Patent No. 3,913,968 ("the '968 patent"), entitled "Collapsible Camper". Since the '968 patent was issued on October 21, 1975, about thirty-eight (38) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

i. U.S. Patent No. 4,114,633 ("the '633 patent"), entitled "Camping tent for motorcycles and cyclists". Since the '633 patent was issued on September 19, 1978, about thirty-nine (39) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

j. U.S. Patent No. 4,612,948 ("the '948 patent), entitled "Portable shelter or tent enclosure, structures and components therefor". Since the '948 patent was issued on September 23, 1986, about twenty-seven (27) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

k. U.S. Design Patent No. D331,441 ("the '441 patent"), entitled "Tent". Since the '441 patent was issued on December 1, 1992, about twenty-one (21) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

l. U.S. Design Patent No. D332,986 ("the '986 patent"), entitled "Tent". Since the '986 patent was issued on February 2, 1993, about nineteen

(19) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

 m. U.S. Design Patent No. D358,191 ("the '191 patent"), entitled "Tent". Since the '191 patent was issued on May 9, 1995, about eighteen (18) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

 n. U.S. Design Patent No. 5,372,156 ("the '156 patent") entitled "Bicycle supported tent". Since the '156 patent was issued on December 13, 1994, about nineteen (19) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

 o. French Design No. 992588-0001 ("the '588 design"), from 1999, entitled "Tente transportable pour enfant destinée aux activités de plein air". Since the '588 design was registered on April 21, 1999, about thirteen (13) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

 p. U.S. Design Patent No. D468,793 ("the '793 patent), entitled "Vehicle simulative child tent". Since the '793 patent was issued on January 14, 2003, about nine (9) years before the '579 patent was filed, the '579 patent would necessarily be invalid.

 q. Chinese Design No. 201230271510.4 ("the '510.4 design"), entitled "Tent (XINYE Outdoors X2-B)". Since the '510.4 design was registered on May 12, 2012, thirteen (13) days before the '579 patent was filed, the '579 patent would necessarily be invalid.

### b. Invalidity of Defendant's '579 Patent due to functionality

33. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

34. The '579 design patent is invalid and unenforceable for failure to comply with one or more of the conditions for patentability set forth in the Patent Laws of the United States Code, Title 35 at least in Sections 102, 103, and 112, 115, 171 and/or 282.

35. Furthermore, the '579 patent is invalid, as its appearance is dictated by function, in other words, it is a primarily functional appearance, and therefore lacks ornamentality.

36. The '579 patent is invalid and/or unenforceable based on various prior art references.

37. Those references, include, but are not necessarily limited to, those listed above, which predate the priority date of the patent-in-suit.

38. Based on, inter alia, the above referenced patents, the '579 patent is invalid.

39. The '579 design patent should be declared invalid due to the fact that, inter alia, it is anticipated by and/or obvious over the prior art under 35 U.S.C. §§ 102 and 103 respectively, and/or is invalid under the provisions of 35 U.S.C. § 112, including, but not limited to, indefiniteness.

### c. Unenforceability of the '579 Patent

40. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

**i. Persons Owing a Duty of Candor to the Patent Office during Prosecution of the '579 patent**

41. U.S. Patent Application No. 29/423,037 ("the '037 Application"), entitled "STORAGE UNIT" was filed on May 25, 2012. The '037 application issued as the '579 Patent on September 10, 2013.

42. The '037 Application was assigned to primary examiner CHIN, CYNTHIA M, from Group Art Unit 2917, for examination.

43. The Application Data Sheet submitted with the '037 Application names George V. Barker, from San Diego, California as the sole inventor.

44. Inventor Barker signed a "Declaration (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)" in connection with the '037 Application on or about May 25, 2012. A copy of the '216 Declaration is attached hereto as Exhibit F.

45. In signing the '037 Declaration, inventor Barker made the following acknowledgement (Ex. F, '037 Declaration at 1.):

> I/we believe I/we am/are the original and first investor(s) of the subject matter which is claimed and for which a patent is sought.
>
> I/we have reviewed and understand the contents of the above-identified application, including the claims as amended by any amendment specifically referred to above.
>
> I/we acknowledge the duty to disclose information to the United States Patent and Trademark Office all information known to me/us to be material to

patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

**WARNING:**

[…]

All statements made herein of my/our own knowledge are true, all statements made herein on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and may jeopardize the validity of the application or any patent issuing thereon.

46. The foregoing individual identified in paragraphs 35–37 above (namely inventor Barker) thus owed a duty of candor to the USPTO during prosecution of the '037 Application.

47. As set forth below, upon information and belief, particularly inventor Barker, breached his duty of candor to the USPTO by failing to disclose material information with an intent to deceive the USPTO.

**ii. The Non-Disclosure of Prior Art Reference**

48. During the prosecution of the '037 Application, the inventor never disclosed a single reference of prior art to the Examiner in charge of evaluating the

application. As such, the inventor with a duty to disclose material information, failed to disclose material prior art with the intent to mislead the Examiner.

49. In particular, on or about October 4 2010, George V. Barker from San Diego California, and Scott R. Gant from Poway, California; filed with the USPTO a U.S. Patent Application No. 29/376,216 with the goal of obtaining a design patent for a "Storage Unit". Said application was later granted as U.S. Design Patent No. D661,513 ("the '513 patent"). A copy of the '513 patent is attached hereto as Exhibit G, and discloses:



50. The '513 referenced patent was filed prior to the earliest alleged priority date of the '037 application both having a common inventorship (Barker). As such, and based on its filing and priority dates, the '513 reference would clearly

qualify as prior art to the Patent-in-Suit under at least 35 U.S.C. §§ 102(a), (b) and/or 103.

51. Despite having first-hand knowledge of the '513 reference and its materiality, Barker did not disclose the existence of the '513 reference to the USPTO during prosecution of the '037.

52. Upon information and belief, at least inventor Barker was aware of the '513 patent and its materiality during prosecution of the '037 Application.

53. Indeed, in view of the non-disclosure of the '513 patent to the USPTO, the single most reasonable inference can be drawn from inventor Barker's failure to disclose the '513 patent is an intent to deceive the USPTO.

54. Clearly, inventor Barker could have submitted an Information Disclosure Statement ("IDS") at least as early as the filing date of the '037 Application, and certainly prior to the issue date, so the examiner could have examined the claims in light of the '513 patent. Nevertheless, the failure of Barker to disclose the '513 patent to the USPTO, particularly when he is named inventor on both patent applications show his intent to deceive the USPTO, thereby rendering the '579 Patent unenforceable.

## VI. FIRST COUNT

**(Declaration of Invalidity and Unenforceability of Defendant's Alleged Patent)**

55. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

56. The '579 patent for a Storage Unit is invalid under 35 USC §102, 103, 112, 116, and/or 282, or under the judicially created doctrines of invalidity.

57. Marketfleet seeks declaratory judgment that the '579 patent is invalid and/or unenforceable, for at least these grounds, and for any and all other grounds of invalidity and unenforceability available under federal law, the Patent Act, including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

58. The '579 patent is unenforceable due to inequitable conduct pursuant to 37 CFR § 1.56;

59. Marketfleet reserves the right to amend its allegations and/or this Complaint to add any further defenses once further discovery has been conducted in this matter.

## VII. SECOND COUNT

### (Declaratory judgement action)

60. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

61. Marketfleet seeks declaratory judgment that the manufacture, importation, use, offer for sale, and/or sale of the Outdoor Storage Shed product because it does not infringe on Defendant's alleged design patent, and does not otherwise violate any of Defendant's patent rights under federal law including because of Count I.

62. Furthermore, this action seeks an appropriate relief that does not interfere with the pending California litigation, an action that has been pending for approximately ten months, where no trial date has been set or settlement conference scheduled, and has yet to address any patent ownership or validity

issue, which is the one of the primary concerns regarding this Declaratory Judgement Action.

## VIII. THIRD COUNT

### (Declaration of Lack of Damages to Defendant)

63. Marketfleet repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

64. Marketfleet seeks declaratory judgment that Defendant has no claim for monetary damages from Marketfleet alleged activities because, inter alia, the patent asserted by Defendant is invalid, unenforceable, and not infringed.

## IX. FOURTH COUNT

### (Derivative Action)

65. Marketfleet re-alleges and incorporates by reference each and every allegation as if fully set forth herewith.

65. Marketfleet brings this action derivatively on behalf of and for the benefit of Marketfleet, Inc., a Delaware Corporation to redress the wrongs claimed herein against Defendant Yardstash.

67. Marketfleet is an affiliate company of Marketfleet, Inc. and will adequately and fairly represent the interests of Marketfleet, Inc. and its Members by vindicating its rights that the Defendant Yardstash refuses to recognize. Marketfleet, on behalf of Marketfleet, Inc., has retained counsel competent and experienced in the matters claimed in this Complaint.

68. Marketfleet was a manager of MFI at the time of the relevant facts alleged herein and has continued to hold its interest in MFI since that time.

69. The wrongful acts complained of herein subject, and will persist in subjecting, MFI to continuing harm because the adverse consequences of the injurious actions are still in effect and ongoing. Including Defendant's threats of patent infringement of the '579 Patent; which to this day continues to exist.

70. The Demand meets the requirements for a derivative action to be actionable by Marketfleet as majority owner of MFI.

71. Further, this Second Count is not a collusive one to confer jurisdiction that this court would otherwise lack since the court has independent federal question jurisdiction arising from the patent claims described in the above counts.

## X. JURY TRIAL DEMAND

72. Pursuant to Rule 38, Fed. R. Civ. P. Plaintiffs hereby demand a trial by jury on all issues set forth herein that are properly triable to a jury.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Act, 35 U.S.C. §§ 101, *et seq.,* Marketfleet prays for relief as follows:

A. That a judgment be entered declaring that Defendant's '579 patent entitled "Storage Unit" is invalid and unenforceable.

B. That a judgment be entered declaring that the claims of the '579 Patent are unenforceable due to inequitable conduct.

C. That Defendant be preliminary and permanently enjoined from threatening or initiating infringement litigation against Marketfleet concerning the '579 Patent.

D. That a judgment be entered declaring that the Driftsun® Storage Tent has not infringed and does not infringe, whether directly or indirectly, literally or by equivalents, any valid claim of the '579 Patent;

E. That a judgment be entered declaring that Marketfleet, its customers, affiliates, licensees, and suppliers have the right to import, make, use, sell, and offer for sale the Driftsun® Storage Tent, and that Plaintiff Marketfleet's product does not infringe Defendant's patent rights, if any.

F. That a judgement be entered awarding Marketfleet its costs and attorneys' fees under 35 U.S.C § 285, and any and all other applicable law.

G. That judgment be entered finding and declaring that this case is exceptional under 35 U.S.C. § 285, and accordingly that Marketfleet is entitled to recover reasonable attorneys' fees and costs upon prevailing in this action; and

H. That Marketfleet be awarded such other relief as this Court deems just and equitable, or which the Court deems just and proper.

**I HEREBY CERTIFY** that this document has been tendered for filing by electronic means and pursuant to FRCP 5(b)(2)(E) and 5(b)(3) and Puerto Rico Local Rule 5(b)(2), receipt of the Notice of Electronic Filing generated by the Court's Electronic Case Filing System constitutes the equivalent of service of the instant motion to all pertinent persons.

**STATEMENT UNDER PENALTY OF PERJURY**

I, Christian Benjamin Friedland, of legal age, married, resident of Dorado, Puerto Rico, hereby state under penalty of perjury, pursuant to the laws of the United States of America, 28 U.S.C. 1746, that I have read the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief, and/or pursuant to the information and documents in Plaintiff's possession, all allegation contained herein are true and correct.



MARKETFLEET PUERTO RICO, INC.
Christian Benjamin Friedland, Authorized Representative

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico this February 26th, 2018.

By: /s/ Vianni Lopez
Vianni Lopez
Lead Attorney, USDC PR No. 300113
viannilopez@gmail.com
Lopez Rodriguez Law Firm
PO BOX 360308
San Juan, PR 00936-0308
Telephone: (925) 983-5745
Facsimile: (530) 763-6748
Attorney for Plaintiff